FILED
2020 Jul-17 PM 02:07
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | ) |
| **Plaintiff,** | ) |
| vs. | ) Civil Action No. 5:20-CV-00332-CLS |
| **WILLINGHAM SALVAGE, INC.,** and **VIOLET WILLINGHAM,** | ) |
| **Defendants.** | ) |

## MEMORANDUM OPINION AND ORDER

This is an action seeking relief in the nature of detinue and replevin.[1] The United States of America ("the government") commenced suit against Willingham Salvage Company, Inc. ("Willingham Salvage"), located in Cullman, Alabama, and Violet Willingham (now deceased), seeking possession of a field gun located on defendants' property.[2] The case currently is before the court on two pleadings: *i.e.*, the government's petition for pre-judgment writ of seizure;[3] and, defendants' motion to dismiss,[4] which was converted to a motion for summary judgment by Magistrate

---

[1] *Detinue* is the name of a common-law action to recover personal property wrongfully taken or withheld by another. *See*, *e.g.*, BLACK'S LAW DICTIONARY 515 (9th ed. 2009) (Bryan A. Garner, ed.). Similarly, *replevin* is a term that describes a common-law action for repossession of personal property wrongfully taken or detained by a defendant, but in this instance the plaintiff gives security for, and holds, the subject property until a court decides which party owns it. *Id*. 1413-14.

[2] *See* doc. no. 1 (Complaint).

[3] *See* doc. no. 3 (Petition for Pre-Judgment Writ of Seizure).

[4] *See* doc. no. 7 (Motion to Dismiss).

Judge Herman N. Johnson,[5] to whom the action initially was assigned. Upon consideration of the motions, briefs, and evidentiary submissions, the court enters the following opinion.

## I. FACTS

The United States Army, acting through its Tank-Automotive and Armaments Command ("TACOM"), Army Donations Program Office, conditionally transferred two 3-inch M-1905 field guns mounted on carriages to American Legion Post 4 in Cullman, Alabama, on January 2, 1950, for "static display purposes."[6] The guns, which bore serial numbers ("SN") 272 and 295, were moved to a salvage yard owned by Willingham Salvage in 1983 for safekeeping while the American Legion Post 4 constructed a new Post facility.[7] However, that move was conducted without either the knowledge or permission of the United States Army.[8] Willingham Salvage released one of the guns, SN 295, in 1999, to the Cullman Veterans of Foreign Wars ("VFW") Post 2214 for a fee of $550. It was placed at 112 Veterans Drive SW in

---

[5] *See* doc. no. 16 (Order Converting Motion to Dismiss to Motion for Summary Judgment).

[6] Doc. no. 3 (Petition for Pre-Judgment Writ of Seizure), at 4, ¶ 2 (Affidavit of Audrey J. Clarke, Chief of the Army Donations Program for TACOM). *See also id.* at 10-11 (Government Exhibit 1). *Nota bene*: the facts raised in the Clarke Affidavit generally track the government's complaint (doc. no. 1), but the complaint appears to skip a page containing key facts, including a specific allegation of the government's ownership.

[7] *Id.* at 13 (Government Exhibit 2 - Letter from Carl D. Reid, Adjutant of American Legion Post 4).

[8] *Id.* at 4, ¶ 3 (Clarke Affidavit).

Cullman, at the facility then shared by, and home to, both VFW Post 2214 and American Legion Post 4.[9] American Legion Post 4 subsequently moved, but SN 295 remains at 112 Veterans Drive SW.[10]

The second field gun, SN 272, remains on the property of Willingham Salvage, prominently displayed at roadside next to a high-flying Confederate Battle Flag.[11] Together with its carriage, field gun SN 272 weighs 2,520 pounds.[12] Neither defendant is an entity eligible to receive or display obsolete Army combat material under 10 U.S.C. § 2572(a). Field gun SN 272 has weathered and "is in need of restoration" before it may be used once again for display purposes in the Army Static Display Program.[13]

Bradley Jan of the TACOM Legal Office placed a telephone call to the Willingham Salvage on October 31, 2017, to discuss recovery of the field gun.[14] Mr. Jan informed the employee of Willingham Salvage who answered his telephone call that the field gun was rightfully owned by the United States Army, and that TACOM would take steps to recover it.[15] Defendant's employee denied that it was in wrongful

---

[9] *Id.* at 13 (Government Exhibit 2).

[10] *Id.*

[11] Doc. no. 3 (Petition for Pre-Judgment Writ of Seizure), at 13 (Government Exhibit 2).

[12] *Id.* at 5, ¶ 4 (Clarke Affidavit). *See also id.* at 21 (Government Exhibit 3).

[13] *Id.* at 5, ¶¶ 6-7 (Clarke Affidavit).

[14] *Id.* ¶ 8.

[15] *Id.* at 6, ¶ 8.

possession of the field gun, and told Mr. Jan that he should contact the company's attorney, Dan Willingham of the Willingham Legal Office.[16] Defendant's responding employee, apparently unaware that she still was on an open telephone line, then announced to a coworker that "the Army wants their cannon back, but that's not going to happen.  We need to let Dan know what's going on."[17]

The government called attorney Dan Willingham later that same day.[18]  The government then followed up with a letter a few weeks later, on December 18, 2017, in an effort to amicably resolve the ownership of the field gun.[19]  The government subsequently made further efforts to resolve the dispute, but none were successful.[20]

Defendants have since avoided the government's calls, and the field gun is deteriorating.[21]  The government thus believes "that there is a substantial risk of concealment, transfer, or . . . damage" to the field gun if it should remain in

---

[16] Doc. no. 3 (Petition for Pre-Judgment Writ of Seizure), at 6, ¶ 8.

[17] *Id.*

[18] *Id.* ¶ 9

[19] *Id.*; *see also* doc. no. 4 (Evidentiary Material in Support of Petition for Pre-Judgment Writ of Seizure), at 4-5 (Government Exhibit 5 - Letter from Brad Jan, TACOM Legal Advisor to Dan Willingham).

[20] *See* doc. no. 3 (Petition for Pre-Judgment Writ of Seizure), at 7, ¶¶ 11, 13 (Clarke Affidavit); *id.* at 26 (Government Exhibit 6 - September 27, 2018 Letter from Brad Jan to Dan Willingham); *id.* at 28 (Government Exhibit 7 - May 13, 2019 Letter from Marion G. Whicker, Integrated Logistics Support Center, U.S. Army to U.S. Representative Robert Aderholt).

[21] *See id.* at 7, ¶ 13 (Clarke Affidavit).  A photograph of the field gun that is the subject of this suit is depicted in the government's Exhibit 4.  *See id.* at 23 (Government Exhibit 4).

defendants' possession.[22]

## II.  PETITION FOR PRE-JUDGMENT WRIT OF SEIZURE

The United States Secretary of Defense is authorized by Act of Congress to "lend or give" certain property, including "condemned or obsolete combat material," to specified entities outside the federal government.  10 U.S.C. §§ 2572(a), (c).  The relevant portions of that statute read as follows:

> (a) The Secretary concerned may lend or give items described in subsection (c) that are not needed by the military department concerned (or by the Coast Guard, in the case of the Secretary of Homeland Security), to any of the following:
>
> (1) A municipal corporation, county, or other political subdivision of a State.
>
> (2) A servicemen's monument association.
>
> (3) A museum, historical society, or historical institution of a State or a foreign nation or a nonprofit military aviation heritage foundation or association incorporated in a State.
>
> (4) An incorporated museum or memorial that is operated and maintained for education purposes only and the charter of which denies it the right to operate for profit.
>
> (5) *A post of the Veterans of Foreign Wars of the United States or of the American Legion* or a unit of any other recognized war veterans' association.
>
> (6) A local or national unit of any war veterans' association

---

[22] *Id.* at 7, ¶ 14.

>of a foreign nation which is recognized by the national government of that nation (or by the government of one of the principal political subdivisions of that nation).
>
>(7) A post of the Sons of Veterans Reserve.
>
>. . .
>
>(c) *This section applies to the following types of property held by a military department* or the Coast Guard: books, manuscripts, works of art, historical artifacts, drawings, plans, models, *and condemned or obsolete combat material*.
>
>(d)(1) A loan or gift made under this section shall be subject to regulations prescribed by the Secretary concerned and to regulations under section 121 of title 40. The Secretary concerned shall ensure that an item authorized to be donated under this section is demilitarized in the interest of public safety, as determined necessary by the Secretary or the Secretary's delegee.

10 U.S.C. § 2572 (emphasis supplied).

In accordance with authority granted by other sub-provisions of 10 U.S.C. § 2572, the Secretary of Defense, acting through the Deputy Chief of Staff, G-4, propounded Army Regulation 700-131 for the purpose of promulgating the policies and procedures for lending, donating, or exchanging documents, historical artifacts, and condemned or obsolete combat material. That regulation delegates authority over 10 U.S.C. § 2572(a) transactions to the Assistant Secretary of the Army for Acquisitions, Logistics, and Technology. AR 700-131 (2004). It also designates the Commander of TACOM as the governmental official responsible for loans, leases,

and donations of Army property, and directs the Commander of TACOM to maintain a central registry for all Army donations under the statute. *Id.*

Federal Rule of Civil Procedure 64 authorizes the use of provisional remedies "[a]t the commencement of and throughout an action" which provide for the seizure of property "to secure the satisfaction of the potential judgment." Actions of replevin are among the remedies expressly made available under the rule. The nature of the remedies, however, is determined by the law of the forum state. *See* Fed. R. Civ. P. 64. The remedies authorized by Rule 64 are, "except as otherwise provided by the Constitution or an applicable federal statute," made "available under the circumstances and in the manner provided by the law of the state in which the district court is held." *Rosen v. Cascade International, Inc.*, 21 F.3d 1520, 1530 (11th Cir. 1994).

The common-law actions of detinue and replevin are codified in Alabama Code § 6-6-250 through § 6-6-264 (1975). Alabama's "statutory action of detinue combines the common-law actions of detinue and replevin," *Friedman v. Friedman*, 971 So. 2d 23, 29 (Ala. 2007), but common-law detinue also remains available for post-judgment recovery. *Id.* (citing *Richardson v. First National Bank of Columbus, Georgia*, 242 So. 2d 676, 680 (Ala. Civ. App. 1970)). The procedure governing pre-judgment seizure in an action for the recovery or possession of specific personal

property is provided in the Alabama Rules of Civil Procedure under the correspondingly-numbered Rule 64(b). *Jones v. Central Bank of the South*, 466 So. 2d 932, 933 (Ala. 1985); Ala. R. Civ. P. 64(b). Rule 64(b) lists the requirements that all petitioners for pre-judgment seizure must satisfy:

> (1) Affidavit. The plaintiff shall file with the court an affidavit on personal knowledge, except where specifically provided otherwise, containing the following information:
>
>> (A) Description of Property. A description of the claimed property that is sufficient to identify the property and its location.
>>
>> (B) State of Title or Right. A statement that the plaintiff is the owner of the claimed property or is entitled to possession of it, describing the source of such title or right and, if the plaintiff's interest in such property is based on a written instrument, a copy of said instrument must be attached to the affidavit.
>>
>> (C) Statement of Wrongful Detention. A statement of specific facts which show that the property is wrongfully detained by the defendant and a statement of the cause of such detention according to the best knowledge, information and belief of the plaintiff.
>>
>> (D) Statement of Risk of Injury. A statement of specific facts in support of the contention, if any, that there is risk of concealment, transfer or other disposition of or damage to the property to the injury of the plaintiff.

Ala. R. Civ. P. 64(b)(1). Rule 64(b) then goes on to outline the procedures that a court in receipt of the complaint must follow:

> (2) Proceedings.

(A) Preliminary Examination by the Court. The court, without delay, shall examine the complaint, the application and supporting affidavit and its attachments and any further showing offered by the plaintiff in support of the plaintiff's right to the immediate possession of the property.

(B) Preliminary Finding for the Plaintiff; Writ of Seizure Without Hearing; Hearing on Dissolution. If the court upon preliminary examination finds that the risk of concealment, transfer or other disposition of or damage to the property by permitting it to remain in the possession of the defendant between the filing of the action and the time of a hearing is real, then the court shall forthwith enter an order authorizing the issuance of a writ of seizure but the court shall provide in said order that the defendant is entitled, as a matter of right, to a pre-judgment hearing on the issue of dissolution of the writ if a written request for hearing is served on counsel for the plaintiff within five (5) days from the date of seizure of the property by the sheriff or other duly constituted officer. If such a request is made, the writ shall expire upon the fifteenth day from said date of seizure unless the court, after hearing, continues the order in effect. The expiration of the writ shall not prejudice the right of the plaintiff to a reinstatement thereof but any such reinstatement shall not be made without notice and hearing. If no request for a hearing is made within the five- (5-) day period, the writ shall remain in effect pending further order of the court but, the court, in its discretion, may hear a request for dissolution of the writ although said request is served more than five (5) days from the date of seizure.

(C) Failure to Make Preliminary Finding for the Plaintiff; Order for Hearing: Hearing on Writ of Seizure or Attachment. If the court fails to make a preliminary finding for the plaintiff under subdivision (b)(2)(B) of this

9

>   rule, the court shall order and direct that the plaintiff's application to the court for a writ of seizure or attachment or such other writ be set down for a hearing before the court at the earliest practical time and notice of the time, date and place of said hearing shall be forthwith served on the defendant.  Said notice to the defendant shall provide that the defendant shall not dispose of or alter in any form the personalty therein described pending the hearing of the application and shall state that if the defendant does dispose of or alter the personalty sought to be recovered, the defendant shall be subject to punishment for contempt of court.  At such hearing the plaintiff shall have the burden of showing good cause for the pre-judgment seizure or attachment, but the failure of the defendant to appear shall be deemed a waiver of any objections to the pre-judgment seizure or attachment.

Ala. R. Civ. P. 64(b)(2).

The government has satisfied the elements of Rule 64(b)(1).  The affidavit attached to the petition describes the property.[23]  *See* Ala. R. Civ. P. 64(b)(1)(A).  It details the field gun's location, size, and serial number.[24]  It provides statements of title or right, wrongful detention, and risk of injury.[25]  *See* Ala. R. Civ. P. 64(b)(1)(B), (C), & (D).  It describes the provenance of the field gun, the history of its transfer to American Legion Post 4, and its unauthorized move to defendants' salvage yard.[26]  Finally, it describes the risk of further damage from weathering and the risk that, with

---

[23] *See* doc. no. 3 (Petition for Pre-Judgment Writ of Seizure), at 4-5, ¶ 4 (Clarke Affidavit).
[24] *Id.* ¶¶ 1, 4; *see also id.* at 13-14 (Government Exhibit 2).
[25] *See id.* at 4-7 (Clarke Affidavit).
[26] *Id.* at 4-5, ¶¶ 2-3, 5 (Clarke Affidavit); *see also id.* at 13-14 (Government Exhibit 2).

the pendency of litigation, defendants will conceal the property.[27]  Accordingly, the government's petition for a pre-judgment writ of seizure (doc. no. 3) is due to be granted.

### III.  MOTION FOR SUMMARY JUDGMENT

The defendants' motion to dismiss,[28] which has been converted to a motion for summary judgment,[29] lacks any basis in law or fact.  The motion itself cites neither case law nor rule of procedure, and it offers only two unsupported claims to rebut the government's affidavit:  *i.e.*, the "cannon that is situated at the property owned by Violet Willingham and upon which Willingham Salvage, Inc. operates, was purchased well over fifty (50) years ago"; and, the "cannon cannot be the same as the government seeks, since the Defendants have owned the cannon for many, many years before the Affidavit says same was moved from [the] VFW."[30]  The balance of the defendants' motion recapitulates the government's affidavit and argues, with patriotic but unsubstantiated fervor, that the government's suit appears to be an assault on the Willingham family for flying the Confederate Battle Flag.[31]

The deficiencies of defendants' motion are discussed in the government's

---

[27] *See id.* at 7, ¶ 14 (Clarke Affidavit).

[28] *See* doc. no. 7 (Motion to Dismiss).

[29] *See* doc. no. 16 (Order Converting Motion to Dismiss to Motion for Summary Judgment).

[30] Doc. no. 7 (Motion to Dismiss), at 1 (alteration supplied).

[31] *Id.* at 2-3.

response.[32] First, the motion lacks factual support: it neither identifies the party from whom the Willinghams allegedly purchased the field gun, nor offers any documentation to prove its ownership. Second, by inference, the gun could have originated only from the United States Army, and the Army has full authority over the disposition of war material. Third, the law supports no theory of defendants' ownership: defendants can neither show authorized acts by federal officers that would have granted them ownership of the field gun, nor can they rely on a theory of laches, adverse possession, or abandonment to assert legal title to it.

Defendants supplemented their motion with an affidavit from Linda Willingham, the daughter of defendant Violet Willingham (who now is deceased), asserting that the "cannon was originally bought by Willingham Salvage, Inc. as scrap and was paid for. It has been so many years that a bill of sale is not retrievable."[33] Linda Willingham alleges that she remembers her parents owning the cannon and remembers it being on "open public display" since she was a teenager.[34]

With the introduction of evidentiary support for the defendants' motion to dismiss, the government moved to convert the motion into one for summary

---

[32] *See* doc. no. 12 (Government Brief in Opposition to Defendants' Motion to Dismiss).
[33] Doc. no. 13-1 (Affidavit of Linda Willingham), at 1.
[34] *Id.*

judgment.[35] The motion was granted by Magistrate Judge Johnson.[36] The government then submitted additional evidence, including the sworn declaration of Carl D. Reid, a former Adjutant of American Legion Post 4, detailing the history of the two field guns and their respective serial numbers; the sworn declaration of Gary Brown, an assistant United States Attorney, authenticating counsel's photographs of the field gun at issue here; and three photos of the field gun on defendants' property showing the gun's weathering and serial number.[37]

Defendants submitted further briefing and three additional affidavits, all from children of deceased defendant Violet Willingham. The affidavits of Anthony Brian Willingham,[38] Karen Willingham Gable,[39] and Terri Willingham Thomas[40] all accord with that of their sister, Linda Willingham: that is, each sibling remembers seeing the cannon on display when he or she was young, but each has been unsuccessful in finding paper evidence to document ownership. The briefing also catalogues a number of cases discussing laches and adverse possession.[41] Nowhere does that

---

[35] *See* doc. no. 15 (Motion to Convert Motion to Dismiss into Motion for Summary Judgment).

[36] *See* doc. no. 16 (Order Converting Motion to Dismiss to Motion for Summary Judgment).

[37] *See* doc. no. 18 (Government's Additional Evidence).

[38] Doc. no. 26-1 (Anthony Brian Willingham Affidavit).

[39] Doc. no. 26-2 (Karen Willingham Gable Affidavit).

[40] Doc. no. 26-3 (Terri Willingham Thomas Affidavit).

[41] *See* doc. no. 26 (Defendants' Additional Evidence), at 2-5.

briefing analyze those doctrines, however, or apply them to the facts of the case. Instead, the briefing materially misstates the law. The government's response refutes each of defendants' points in a case-by-case rebuttal.[42]

Because the parties dispute the key facts at issue — where the field gun originated and who owns it — defendants' motion to dismiss, converted to one for summary judgment, will be denied.

## IV. CONCLUSION

For all the reasons stated above, the government's motion for pre-judgment writ of seizure is GRANTED, and defendants' motion to dismiss, subsequently converted into one for summary judgment, is DENIED.

**DONE** and **ORDERED** this 17th day of July, 2020.

_____
Senior United States District Judge

---

[42] *See* doc. no. 27 (Government Reply Brief).